Charlotte M. Hill v. Commissioner.
Hill v. Commissioner
Docket No. 729-66.
United States Tax Court
T.C. Memo 1967-72; 1967 Tax Ct. Memo LEXIS 189; 26 T.C.M. (CCH) 371; T.C.M. (RIA) 67072; April 7, 1967
John B. Harrington, for the petitioner. Rufus E. Stetson, for the respondent. TANNENWALD
Memorandum Opinion TANNENWALD, Judge: Respondent has determined income tax deficiencies against petitioner as follows: Addition
Overassessment
to Tax
of Delinquency
Income Tax
(Sec.
Penalty
Year
Deficiency
6653(b)) [1]
(Sec. 6651(a))
1960
$ 758.01
$662.01
($46.29)
1961
1,380.11
968.06
1962
568.73
486.87
($25.08)
The deficiencies were based on a determination that petitioner, during the taxable years in question, had additional income in the *190 form of embezzled funds. Petitioner is a single woman, 39 years of age. At the time of the filing of the petition herein, her legal residence was in Burlington, Vermont. At all times pertinent, she lived with her widowed mother. Some time in 1953 or 1954, petitioner was employed as a clerk by the business concern which, for almost the entire period involved herein, was known as Agel-Corman Furniture Co. (hereinafter referred to as "Agel-Corman") and was located in Burlington, Vermont. Petitioner's employment with Agel-Corman continued until the latter part of 1962. Petitioner had access to the cash receipts of Agel-Corman. Among petitioner's responsibilities were posting the books of account of Agel-Corman and making cash deposits in that concern's bank account. Several other persons connected with Agel-Corman (including Herman Thomas, one of the owners) also had access to such receipts and, from time to time, made cash deposits of such receipts in said bank account. There were numerous discrepancies between the amounts of the cash receipts as shown on the cash register and the amounts of the cash bank deposits. Petitioner became aware of such discrepancies some time prior to *191 1960. After consulting with one of the owners of Agel-Corman, petitioner "plugged" these discrepancies by adjusting entries in the books of account. In July 1962, petitioner took a trip west with her mother and spent two or three days in Las Vegas, Nevada, where she indulged in minor gambling activities. In January 1963, an information charging embezzlement of funds from Agel-Corman was filed against petitioner in Chittenden CountyCourt, Vermont. After several continuances, a "nolle prosequi" was filed by the state's attorney in September 1965. During the taxable years involved, aside from her earnings from Agel-Corman, petitioner had no income and had assets of only nominal value. Her expenditures during the period were minimal. In her petition herein, petitioner concedes that at an unspecified time she admitted the theft of $150 from Agel-Corman in 1960, and the stipulation of facts admits that petitioner embezzled $300 from Agel-Corman in July 1962. Petitioner did not file income tax returns for the years in question until October 1964. She conceded that at the time of filing she refused to report the $300 of embezzled funds on her 1962 return although she had been specifically *192 advised that embezzled funds constituted taxable income. The basic issue herein is whether petitioner embezzled funds as asserted by respondent, and, in this respect, petitioner has the burden of proof, even though her task is essentially the difficult one of proving a negative. Rule 32, Tax Court Rules of Practice. There is no question on this score as to $150 in 1960 and $300 in 1962, for petitioner admits she embezzled these amounts. Petitioner took the stand on her own behalf. In open court she was specifically reminded by her counsel of her Constitutional rights and she made clear to the Court that she was aware of, and understood, the penalty for perjury. Against this background, she gave her testimony. Although she was at times somewhat confused by the questions, she was consistent throughout and categorically denied that she had embezzled any funds beyond the amounts admitted. In this latter regard, she was supported by the testimony of her mother. Respondent chose to rely exclusively on cross-examination. This he was privileged to do and the fact that he followed this course does not relieve petitioner of her burden of proof. Respondent's cross-examination was directed *193 almost exclusively to portraying the petitioner as an inveterate gambler. He attempted to do this through skillfully worded general questions designed to elicit answers which would have a double entendre quality. His strategy failed. To agree with respondent would require us to disregard in its entirety the testimony of petitioner and her mother. This we are not prepared to do, even though we recognize that such testimony may be characterized as self-serving. [2]
We hold that petitioner has carried her burden except with respect to the amounts she admitted embezzling in 1960 and 1962. With respect to the addition to tax for fraud under section 6653(b), respondent, of course, has the burden of proof. Section 7454(a). Embezzled funds are clearly taxable income. James v. United States, 366 U.S. 213 (1961). The record shows that in October 1964 (over three years after James was decided) *194 petitioner was specifically advised that embezzled funds were income but nevertheless refused to report the $300 in her 1962 return. Although it is not absolutely clear, we think it can fairly be inferred that she also knew that she should have reported the $150 in her 1960 return. The returns filed at that time were long overdue and petitioner gave no reason whatsoever for the delay. Under these circumstances, we hold that respondent has carried his burden of proof and that petitioner's actions were fraudulent, within the meaning of section 6653(b), for the taxable years 1960 and 1962. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. We note that others had access to the cash receipts as well as petitioner. Although there was some indication, on cross-examination, that a bonding company paid $2,500 to Agel-Corman with respect to embezzled funds, there is no evidence that petitioner was the only person bonded.↩